Please 1703.4 Melanie Martin v. Awarded Responsibility. Howdy, your honors. May it please the court, counsel. My name is Damon Young. I represent Melanie Martin, the petitioner, the appellant in this case. My client was injured on January 6, 2015. And in this case, I don't believe any of the facts are in dispute. And what happened was, is that my client worked for the employer and she worked on the second floor. She worked the shift from 9.30 until 6 p.m. As she walked down the stairs, she got to the exit door and realized that she had forgot her personal cell phone. As she walks up, she gets to about the sixth floor, or the sixth step of the stair and slips over missing grip tape and grabs the rail and injures her back. The employer had her seen by an IME who calls it connected the accident to her injuries. Mr. Young, the stairs are on the employer's premises, is that right? Yes, your honor. Okay. Let me, if I could just summarize what appears to be the arbitrator's, the commission's decision here and identify what I would consider to be concerns with the decision. I just want to see if you agree with these observations. It appears the commission noted or found significant the fact that she had just clocked out and that that somehow took her out of the in the course of a portion of the employment here. It found significant that she had just clocked out. It seems to me reading between the lines, they would conclude that upon clocking out, the employee can no longer be considered in the course of, whereas we know from Supreme Court decisions that injuries can be found to have occurred in the course of employment within a reasonable time before or after. Would you agree with that observation in regards to the commission's decision? Yes, your honor. No, exactly, I agree. And I'd also add too, I think as far as in the course of another thing, they took into account that as she went back up the stairs, it was to get her personal cell phone and not work related. So it was those two facts. They cited to this Martin decision, but in Martin, the individual had actually left the premises, was gone for two hours, and then returned to pick up her husband at work. Is that right? Absolutely, yes, your honor. So that's a much different case, is that right? I agree with that, yes, your honor. In this case, she never actually left the premises? No, as close as she got was to touch the exit door and realize that she had forgot her personal cell phone. She never left and came back in? No, your honor. Then the arbitrator goes on to also find significant that she chose this particular route, that there were multiple other avenues for exiting the building. Seems to be that the arbitrator is going down a bomberito path here in terms of indicating that the employee had different ways of entering and exiting. But in bomberito, the defect was outside the employer's premises. Here, the defect was inside the building, correct? Yes, your honor. It doesn't appear that bomberito applies or this analysis applies. Is that your position? Yes, your honor. It was within the building and multiple ways were just the stairs of the elevator inside the building. But I agree with your analysis that she didn't exit, she didn't go to an alley, she didn't trip in a pothole. No, it was within the building of the employer and it was just within her exit right before she left the building. And then the commission describes the condition of the step and just by its description of it, the inference is that they're maybe describing it as a de minimis defect, but they never come out and say that. They never come out and say that in his opinion that the defect in the step did not contribute to her fall. Is that right? I think they did try to say it was de minimis, but I'm not sure. Well, I guess implied yes, your honor. I would agree with you is that maybe that's what they implied. Well, in the light most favorable to, well, from a manifest weight standpoint, if you're looking at it from the Appalachian standpoint here, is there, does the evidence here reflect that there was a defect in the condition of the steps, putting aside whether or not it contributed to Clement's fall? If I was going to argue the appellee's argument, what I would say is that missing grip tape was on all of the stairs. People that have grip tape on stairs, multiple stairs, the general public is exposed to grip tape. A lot of times it wears out. This is something the general public is exposed to. It doesn't seem like even, you know, from the commission's standpoint, it doesn't seem like there's an issue that there was a defect. If they identify a defect, now the employer is going to say it didn't contribute to cause her fall, but just reading through the commission's decision, I didn't find where they reached that conclusion. They made the observation as to what the defect was, but then didn't conclude whether or not it contributed to cause her fall. Is that accurate? Yeah, I think that's accurate. And then as I read it, it seemed to me it was kind of just brushed over in their analysis that there was missing grip tape, but doesn't believe it's a defect. I could not argue today what their position is would be difficult specifically, except, like you said, maybe de minimis or it really wasn't something that caused her fall. But from the testimony, she testified that she walked up the stair, she caught the cement was smooth, and then the grip tape started, and she said that there was a ledge there. And that was what slipped, and her foot caught the cement, then caught the edge, and then she fell forward. So while they didn't get into specific testimony, my argument's always been is that there is no de minimis rule that I know of in workers' compensation. I know in civil, you know, there's gaps in sidewalks and everything, and there is a de minimis rule on trip and falls, but that is also a negligence standard, not a standard for workers' compensation. I think if you look at the stairs, missing grip tape, I think it's true analysis, and I listened to this argument yesterday on defects in this court, is that not only do we have a defect of missing grip tape, but it's also just important to note that the grip tape missing is the reason that she fell. That was her testimony. There were problems with the grip tape, and that's why she fell. In any event, the commission did not really specifically note whether or not the alleged defect attributed to her fall. It went all in, basically, so to speak, on rising out of and in the course of. Yes. And obviously you disagree with it for those reasons. If we were to accede to the correctness of your position, would this case not necessarily have to be remanded so the commission can rule on the defect issue? If, I think, I mean, it would be, I think from the facts I could argue here today that there is a defect and it's clear on the defect, but I would agree also that while it's unclear in the commission decision how they came to the conclusion that there was no defect. But we can't come to that conclusion for them, can we? Well, I think in the Bomarito decision, they found that this was a question of law in regards to rising out of and in the course of, and they ruled that that could be seen as a de novo decision. How could a defect on a stair be a question of law? It's a question of fact, isn't it? Right. The rising out of is the question of law. The facts are the stairs if there's a defect or not. Point well taken, yes. Okay, it's not a question of law.  All right. And I think just to conclude with the, in the course of, is that I didn't, I guess from the case law that I read and the facts in this case, I did not see a case where somebody that was against the petitioner that was in the building and fell or had an issue where all of the cases and the Martin case that was quoted, they all left and came back. Well, we'll get into it. I think you're correct. We'll have to ask the opposing counsel. There's a plethora of cases that stand for the proposition that accidental injuries sustained on an employer's premises within a reasonable time before and after work are generally deemed to be in the course of. So I think the law is clear on that. She didn't even leave the premises. The Martin case is an outlier because the person left the building and came back two hours later. That's clearly not the case. Yes, Your Honor. Okay. Thank you. You'll have time in reply, Counsel. Counsel, you may respond. Good morning, Justices. Good morning, Counsel. My name is Paul Verard. I'm the attorney for the employer, AT&T, also known as AT&T Services, Inc. And I obviously had an outline prepared, but I'd like to first address your concerns about the… You know what the issues are. And the course of is a little bit problematic here. Tell us why this did not happen in the course of it. I certainly agree that it's a little bit closer of a call, I believe, in the course of finding than the arising out of finding. I would say that the distinguishing factor, I believe, is from the ingress and egress cases is that they were actually going or coming from work. In this case, she had already essentially left for work. When she was coming back, that was for her own personal reasons to retrieve that cell phone that she had forgotten in her office. If she hadn't left the building, I mean, let's carry your proposition out to its logical extreme extension. What if somebody starts to leave, clacked out, and they have to use the bathroom? If they trip, they're not covered because they had to go use the bathroom? According to your argument, yes, she clacked out. She's done for the day. Well, I think if she had already left, in this case, she was at the door leaving the building and they decided that she had to go to the bathroom… She left where? The office building. She had left. It was the door leaving out into the parking alleyway, parking lot. It's still in the building. She's on the employer's premises. When you say left, you know, that implies leaving the employer's premises. She hadn't left the employer's premises. Well, I agree she hadn't left the employer's premises. I mean, obviously, I can't dispute that. But once she stands up from her desk, then that takes her out of being in the course of employment? Because she's left maybe her work space? Well, I think in this case it's that she had turned around for completely personal reasons. We're now getting into a rising, we're conflating analysis. We're talking about in the course of, and again, how do you respond to those quotes from those cases beginning with Caterpillar Tractor? Injuries sustained on the employer's premises within a reasonable time before and after work, quote-unquote. Even if we give your argument it's due, she had concluded her work for the day, are generally deemed to rise in the course of. After work, she hadn't left the building. So how did your argument square with Caterpillar Tractor and its progeny here? Well, I believe the difference is that she had actually completed all of her work for the day. There was no reason why she would need to go back. Caterpillar Tractor says after leaving work. Within a reasonable time after work. Somebody can't turn around and retrieve a cell phone and go to the bathroom because they clocked out for the day? There we go. You can see the issue here. I know we don't expect you to conceive the point, but the case law would suggest that your argument is problematic. Let's tactfully put it that way. Justice, as I may, when this case was tried, I believe the primary testimony at the hearing was about the horizon. The course of finding, I think, was maybe a little more surprised than I would have anticipated from the judge. Because the hearing was primarily concentrated on whether or not this stair and this tiny area of missing grip tape was a defect or had caused increased risk. So how do we get to the horizon you alluded to? So why wasn't this accident in the horizon out of the appointment? I believe it's because there was no defect. There was no this grip tape. And I believe we've all probably seen the pictures now. That's not what the arbitrator said. The only thing the arbitrator said is this. The only thing the arbitrator notes is the step on which the petitioner alleged she fell did have a small section of non-slip strip missing. However, the picture shows that the strip was not raised or buckled. And, in fact, even when the piece was missing, the height of the strip was exactly the same as around the perimeter of the strip. They never said that she didn't trip on it. They never said it. Well, I think you can imply from saying the height of the strip was exactly the same size as the perimeter around it is that it was impossible for her to trip on it. And if you look at the picture, I think that's certainly true. But nobody ever specifically ruled on the nature of the defect and how it contributed or didn't to the cause. It's noted. But do we make the conclusion? Are we to try as a fact that it wasn't defective? How do we do that? Well, I think just by looking at the picture, that was essentially the entire trial was about was that there's nothing wrong with the stairs. I mean, she notes in the finding or in the commission's decision that, you know, it wasn't raised or buckled. It was exactly the same height. So, right there, I believe that they're inferring there was nothing wrong with the step. You know, if that was the entire trial, the arbitrator sure went out of her way to comment on a lot of other things and then to pointedly not comment on what was the key issue then, according to you, which is was there a defect that contributed to cause her fall. So, I don't know who wrote the decision here, but it sure doesn't address the issue that you indicate was the focus of the hearing. I would just, I believe that I would have liked her to maybe expand on the three sentences that she did include. But I think that from those three sentences that Justice Hoffman was just referring to, she did make a finding that there was nothing wrong with the steps. She's saying the strip was exactly the same height as the stairs. Why are we talking about the height of the strip, okay? I mean, are we because the claimant said trip instead of slipped? Well, I believe it's because if you look at the picture, the height is essentially, as the arbitrator noted, exactly the same. There really isn't anything there. Well, that doesn't negate a slip, does it? A trip usually implies that you stumble. Justice, there was maybe an inch missing area of the strip to say that you could slip on an inch. I mean, your foot is probably three inches wide. I don't know how we could say that this one inch area, this missing grip tape, would cause a slip when your shoe would be an inch on each side on the grip tape. I haven't seen the shoe. I don't know the width of the lady's foot. Well, she did say she was wearing snow boots. It was the winter. That helps you out. Again, very narrow feet. Okay. But you're saying there is a finding that there was no defect in the stairs? I believe so. I don't think she's specific. Obviously, she didn't say there is no defect, but she says the strip wasn't raised or buckled. It was exactly the same height as the stairs around it, I think. So you're saying that's the functional equivalent to ruling it was not defective. Your argument is clear. You say there's enough there for us to infer that. That's what I believe. Okay. Is there any other questions? No. Thank you. Thank you. You have reply time. I would just like to add is that I would agree with the court that I don't think there is enough there to find that there was a defect. You shifted your position. I love the opinion that going into the height of the grip tape, it's missing, and there's two surfaces. There's a smooth cement surface, and then there's the rough grip tape surface. She says her foot caught that grip tape and fell forward. I think it's clear from the picture that there is a defect with that tape because it's not there. It causes a rough surface and a smooth surface, and she testified that missing grip tape caused her to fall. Well, actually, her testimony was my boot caught on a safety strip that had a little rolled area. So, I mean, she's describing a defect that, as I read it, the grip tape had a roll to it or was bunched up in some way. So, really hard to tell, you know, what the condition was. The commission has presented with the photographic evidence as well as the plaintiff's testimony in regards to this rolled area of the safety strip. So, they've got to make a determination as to whether or not it was that defect that contributed to cause her fall. Yes, Your Honor, I agree. Thank you. Thank you, counsel, both for your arguments in this matter. It was taken under advisement. This position shall issue.